No. 26,213.

SCHOOL DISTRICT No. 42, PRATT COUNTY, *Appellee,* v. THE CROFT STATE BANK, *Appellant,* and C. O. McKEE.

SYLLABUS BY THE COURT.

1. BANKS AND BANKING—*Deposits—Misappropriation—Evidence.* The evidence was sufficient to sustain the verdict and judgment.

2. SAME—*Deposits—Liability for Misappropriation of Trust Fund—Instructions.* In an action by a school district to recover from a bank money which had been misappropriated by the school district treasurer, it is not error to instruct the jury that the bank is liable to the school district for the money misappropriated where the bank received the money from another bank for the use of the treasurer of the school district, knew that the money received arose from a sale of bonds issued by the school district for the purpose of building a schoolhouse, and deposited the money to the individual credit of the school district treasurer, who thereafter misappropriated the money with the knowledge and consent of the bank.

3. SAME—*Misappropriation of Trust Fund—Extent of Liability.* Under the circumstances described in the second paragraph of this syllabus, it was not error for the court to refuse to limit the amount of the judgment to the amount remaining in the bank at the time the other officers of the school district directed the bank to cease paying the checks of the treasurer.

Appeal from Pratt district court; GEORGE L. HAY, judge. Opinion filed June 12, 1926. Affirmed.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson,* all of Wichita, *William Barrett* and *George Barrett,* both of Pratt, for the appellant.

*John W. Davis,* of Greensburg, *R. F. Crick* and *L. G. Turner,* both of Pratt, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff sued to recover money which had been placed in the hands of the defendant bank for the use of the treasurer of the plaintiff district and which the bank placed to the personal credit of the district treasurer, defendant C. O. McKee.

---

Banks and Banking, 7 C. J. pp. 561 n. 3, 634 n. 21, 669 n. 39, 671 n. 49; L. R. A. 1915C, 518; 3 R. C. L. 550.

Judgment was rendered in favor of the plaintiff, and the Croft State Bank appeals.

The school district voted $15,000 in bonds to obtain money with which to build a schoolhouse. The bonds were sold through the defendant bank to Brown-Crummer Company, of Wichita, for $14,400. The Brown-Crummer Company placed the proceeds arising from the sale of the bonds in the First National Bank of Wichita "to be deposited to the account of the Croft State Bank, Croft, Kan., for the use of the treasurer of School District No. 42, Pratt county, Kansas." The Brown-Crummer Company immediately wrote the Croft State Bank as follows:

"We are inclosing herewith duplicate deposit slip for deposit of $14,400 on May 13, in the First National Bank, for the account of your bank, for the use of the treasurer of School District No. 42, Pratt county; Kansas, which we trust will be entirely satisfactory to you."

When the cashier of the defendant bank received information concerning the deposit in the First National Bank of Wichita, he talked to C. O. McKee and told him that the money had been received. There was evidence which tended to show that in the conversation the cashier told C. O. McKee, "That money has arrived, and for God's sake keep still about it," and that McKee told the cashier to place the money to McKee's personal credit. The money was immediately placed in the personal account of C. O. McKee and was checked out by him for all purposes, personal as well as otherwise. At the time the money was received by the bank, there was an overdraft of $1.19, and there were then in the bank unpaid checks of C. O. McKee amounting to a little more than $800. The overdraft was immediately taken out of the account, and the checks then in the bank were paid therefrom by the bank. Afterward, C. O. McKee on his personal check paid a note he owed to the bank amounting to $2,000. There was evidence which tended to show that this was done at the request of the cashier, who, at the time the payment was made, promised C. O. McKee that if the school district desired the money, "We will see they get it." The bank knew that the money belonged to the school district, and was the money arising from the sale of the bonds voted for the purpose of building a schoolhouse. Finally, the director and the clerk of the plaintiff district learned that the money of the district had been dissipated, and notified the officers of the bank to stop payment of all checks given by C. O. McKee. Payment was stopped, and at that time there was in the account of C. O. McKee a balance of $3,840.08.

He had at different times deposited his own money in the account, amounting approximately to $2,000 in all. He was engaged in business and used this account in his business.

1. The bank argues that "there was a total lack of evidence to support verdict and judgment." Some facts were conclusively established by the evidence; they have been stated. Evidence of the plaintiff on some of the disputed facts has been summarized. The bank received the money for the benefit of the plaintiff. The money was not deposited in the bank in that way. The bank, in depositing the money to the personal credit of C. O. McKee, violated the instructions given to it and thereby misapplied the money. It is argued that the situation was the same as though the bank had placed the money to the credit of the treasurer of the district, and the treasurer had then checked out the money and redeposited it to his personal credit. If that had been done, the bank would not have misapplied the money, and it would not have been responsible for the misappropriation of the money by the treasurer of the district. The bank first misapplied the money received, and thereafter continually consented to its misappropriation by the treasurer of the school district. The bank should have placed the money to the credit of the treasurer of the school district in his official capacity, not in his personal capacity. The evidence was sufficient to support the verdict and the judgment.

2. The bank argues that "the court erred in its instructions as to what would constitute actionable participation by the bank in McKee's breach of trust." This complaint is made of the last part of the twelfth instruction, which reads as follows:

"If you find and believe from the evidence that the managing officers of said bank at the time the funds in question were deposited in said bank knew that said funds, to wit, $14,400, were the proceeds of the sale of the school bonds in question, and you further find that said funds were deposited in said bank in the name of the defendant C. O. McKee or to his individual account, and that the said C. O. McKee issued checks on said funds drawn on said defendant bank, then I say to you that in that case it was the duty of the defendant bank to honor the checks of the said defendant McKee, and that the defendant bank incurred no liability to the plaintiff for paying such checks, *unless you further find and believe from the evidence that the defendant bank participated in a misappropriation of such funds or in the breach of trust on the part of the said defendant McKee, or that said checks were paid under such circumstances as charged the defendant bank with notice that the said McKee was violating his trust as treasurer of said school district.*"

The complaint is directed specifically to that part of the instruc-

tion which is here italicized. With this instruction should be considered instruction No. 6, which reads as follows:

"6. In this case if you find and believe from the evidence that the defendant bank, through its managing officer or officers, knew that such defendant bank was given credit for the sum of $14,400, and that it knew at that time that such sum was the proceeds of the sale of certain school bonds issued by the plaintiff and sold to Brown-Crummer Company, and that such proceeds, although deposited to the credit of C. O. McKee and in his name, were the property of the plaintiff and not the property of the defendant, C. O. McKee, and you further find that the Croft State Bank, through any of its managing officers, solicited, induced and knowingly permitted the said defendant, C. O. McKee, to check against said funds in payment of his personal obligations to the defendant bank or to other persons, and that such checks were charged against said funds so belonging to the plaintiff and the plaintiff's said funds were thereby depleted, and that thereafter demand was made upon the defendant bank by the plaintiff or any of its officers for the payment of such sums, and such demand was refused by the defendant bank, then I say to you that the plaintiff would be entitled to recover from the defendant an amount equal to the sum so checked out by the said McKee out of said funds so belonging to the plaintiff in the manner hereinbefore stated, not exceeding the sum of $14,400."

There was no reversible error in the instructions.

3. The bank urges that "the court erred in denying our motion to limit the judgment notwithstanding the verdict." What has been said disposes of this contention. The bank unquestionably owed to the plaintiff the amount on deposit in the account at the time payments out of it were stopped. That amount has been stated to have been $3,840.08. The bank concedes that judgment should have been rendered for that amount, but argues that judgment should not have been rendered for a greater amount because it had no control over the manner in which the treasurer drew on the account. The fault with the argument is in the fact that the bank first misapplied the money and afterward consented to its misappropriation.

There are other assignments of error, but they are not argued in the brief and will not be discussed, except to say that they have been examined, and none of them can be sustained.

The judgment is affirmed.

HARVEY, J. (dissenting): I do not agree with the conclusion reached in the opinion that the bank misapplied the $14,400 when it deposited the same, or permitted it to be deposited, in the personal account of C. O. McKee. McKee was treasurer of plaintiff. It was his duty to take care of this money, and whether he kept it

in a separate account as treasurer, or in his personal account, as he had previously done with the plaintiff's money, was a matter which concerned him and the plaintiff, but was of no concern to the bank. The bank performed its duty when it delivered the money to McKee. It was McKee's duty as treasurer of plaintiff to keep it safely and account for it to plaintiff; no such duty rested on the bank. Neither am I impressed by the remark McKee testified the cashier of the bank made to him when the money was received, for the reasons: First, that McKee's testimony was so thoroughly discredited, and he was so obviously biased in his effort to assist plaintiff in getting a judgment against the bank, and thus be relieved from his own responsibility, that no credence should be given to his testimony as to such remark. But perhaps that is a matter the jury should pass upon rather than this court. Second, the other members of the school board of the plaintiff testified they knew the money was received; hence, if the bank's cashier did make such a remark it did not and could not have any effect upon plaintiff's knowledge concerning it. It is my judgment that plaintiff's recovery in this case should be limited to the $3,840.08 in the account when the controversy arose and the $2,022.69, being the amount of McKee's note paid to the bank out of this account. The remainder should be recovered from McKee and his bondsmen.